IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| TRUENORTH MEDICAL PHYSICS, | : | Case No. 1:24-cv-643 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| LANDSTAR RANGER, INC., et al., | : | |
| Defendants. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 10), Motion to Dismiss Plaintiff's Amended Complaint (Doc. 13), and Motion to Dismiss Plaintiff's Second Amended Supplemental Complaint (Doc. 21). Each is fully briefed, or the time to do so has passed. Thus, the matter is ripe for review. For the following reasons, Defendants' Motion to Dismiss (Doc. 10) and Motion to Dismiss Plaintiff's Amended Complaint (Doc. 13) are **DENIED AS MOOT**. Defendants' Motion to Dismiss Plaintiff's Second Amended Supplemental Complaint (Doc. 21) is **GRANTED**[1].

## ALLEGED FACTS

Plaintiff TrueNorth Medical Physics is a supplier of highly valuable and expensive medical and physics support equipment. (Second Am. Compl., Doc. 20, ¶ 9.) Defendants Landstar Ranger, Inc. and Landstar Logistics, Inc. (collectively "Landstar" or

---

[1] Defendants' Motion to Dismiss seeks only to dismiss Counts II and III of Plaintiff's Complaint. Accordingly, although the Motion to Dismiss is granted in full, this Order does not terminate the case. Count I shall proceed.

"Defendants") provide motor carrier freight transportation services. (*Id.* at ¶ 11.) Kelley Logistics, LLO ("Kelley") is a property transportation broker that entered into an agreement with Landstar wherein Landstar provides its transportation services to Kelley's customers and transportation vendors. (*Id.* at ¶¶ 10-11.) Plaintiff engaged Kelley to arrange transportation of its property; Kelley, through its agreement with Landstar, used Landstar's motor carrier transportation services to effectuate this transportation. (*Id.* at ¶¶ 10, 12.) In simpler terms, Kelley was the broker and Landstar was the carrier for the transportation of Plaintiff's property. (*Id.* at ¶¶ 13, 14, 23.) Landstar used its agent, A. Duie Plye, Inc. to fulfill the transportation services to Plaintiff. (*Id.* at ¶ 25.)

On November 11, 2022, Landstar was supposed to pick up and deliver equipment in two medical crates; specifically, the crates contained a BEAMSCAN Water Phenom System ("BEAMSCAN System"). (Second Am. Compl., Doc. 20, ¶¶ 27-28.) Plaintiff paid $17,650.00 for these transportation services. (*Id.* at ¶ 29.) Plaintiff represents that, prior to Landstar picking up the two crates for transport, the BEAMSCAN System was undamaged and in good working order. (*Id.* at ¶ 31.) One of the crates contained a water tank for the BEAMSCAN System; this crate had specific instructions for its handling, which stated that a minimum of two people were required to lift and remove the crate. (*Id.* at ¶¶ 32-33.) Plaintiff alleges, however, that Landstar's delivery driver arrived alone and rolled the crate onto the hydraulic system by himself, without securing the crate with straps or in any commercially acceptable manner. (*Id.* at ¶¶ 34-35.) Then, as the driver grasped the crate handles by himself, he directed a bystander to operate the controls of the lift. (*Id.* at ¶ 36.) As the lift lowered, the driver failed to maintain control of the crate

2

and the crate fell to the ground from three to four feet above. (*Id.* at ¶¶ 37-38.) This fall damaged the equipment inside the crate; Plaintiff maintains that the damage only occurred because the driver dropped the crate. (*Id.* at ¶¶ 39-10.) In fact, the driver noted on the Bill of Lading that "[t]he crate was dropped from 4 feet high" and "the contents may be damaged." (*Id.* at ¶ 41; *see also* Bill of Lading, Doc. 20-3.)

After the loss, Plaintiff paid $69,450.00 to repair all the damage to its property but has not received any compensation from Landstar. (Second Am. Compl., Doc. 20, ¶ 46.) Plaintiff, through Kelley, also submitted a loss and damage claim to Defendants for $68,000.00 on December 2, 2022, about twenty-one days after the date of loss. (*Id.* at ¶ 47.) To date, Plaintiff has not received any money from that claim. (*Id.* at ¶ 48.)

## PROCEDURAL POSTURE

Plaintiff filed this Complaint against Defendants on November 8, 2024. (Compl., Doc. 1.) Defendants moved to dismiss the Complaint (Motion, Doc. 10), and Plaintiff then filed an Amended Complaint (Doc. 12). Defendants moved to dismiss the Amended Complaint (Motion, Doc. 13), and the parties fully briefed the Motion (*see* Docs. 14, 15). Plaintiff then moved for leave to file a second amended complaint, which Defendants did not oppose. (Motion, Doc. 18.) The Court granted this Motion, and Plaintiff filed its Second Amended Supplemental Complaint on June 10, 2025, which serves as the operative Complaint in this matter. The Motions to Dismiss the original Complaint and Amended Complaint (Docs. 10, 13) are thus moot.

The Second Amended Supplemental Complaint brings three claims against Defendants: (1) violation of the Carmack Amendment to the Interstate Commerce Act, 49

U.S.C. § 14704(B); (2) breach of bailment duty; and (3) breach of contract. (Second Am. Compl., Doc. 20, ¶¶ 49-65.) Defendants have now filed a Motion to Dismiss Plaintiff's Second Amended Supplemental Complaint (Doc. 21), which has been fully briefed.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim tests a plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept all factual allegations as true and construe them in the light most favorable to the plaintiff. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). That said, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555. And, when a complaint contains sufficient facts to satisfy the elements of an affirmative defense put forth by a defendant, courts may grant dismissal on that basis. *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013).

## ANALYSIS

Defendants move to dismiss Counts 2 and 3 of Plaintiff's Second Amended Complaint ("SAC") because they fail as a matter of law. (Motion, Doc. 21, Pg. ID 161.) According to Defendants, the Carmack Amendment preempts all state law claims against motor carriers, including Plaintiff's breach of bailment duty and breach of contract claims. (*Id.*) Thus, Defendants contend that these claims must be dismissed. (*Id.*)

In order to properly address the merits of Defendants' arguments, the Court finds an examination of the applicable law appropriate. The Carmack Amendment—part of

4

the Interstate Commerce Act, 49 U.S.C. § 1, *et seq*—was enacted to create a "national scheme of carrier liability for loss or damages to goods transported in interstate commerce." 49 U.S.C. § 14706; *Exel, Inc. v. Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015). In relevant part, the Amendment states that a "carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property." 49 U.S.C. § 14706. In short, the Carmack Amendment makes a carrier strictly liable for damage to the transported property, relieving the shipper of the burden of finding the carrier responsible for the loss. *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 98 (2010). To recover under the Amendment, a shipper need only prove three elements: "(1) the goods were in good condition upon receipt by the carrier; (2) the goods were not delivered or arrived damaged; and (3) the amount of damages measured by actual loss." *Missouri Pacific R&R Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964).

Importantly, because the Carmack Amendment creates strict liability for carriers, it preempts all state law claims arising from the same facts against those carriers. *Great West Cas. Co. v. Flandrich*, 605 F. Supp. 2d 955, 966 (S.D. Ohio 2009). Defendants only seek to dismiss Plaintiff's state law claims, not the Carmack Amendment claim itself, on preemption grounds. (Motion, Doc. 21, Pg. ID 161.) As Defendants point out, Plaintiff's Second Amended Complaint alleges that Defendants were carriers and thus fall under the purview of the Carmack Amendment. (*Id.*; *see also* Second Amended Complaint, Doc. 20, ¶ 13.)

5

Plaintiff responds by stating that, while the Carmack Amendment may preempt state law claims against carriers, it does not do the same for brokers. (Response, Doc. 25, Pg. ID 181.) Indeed, "its provisions do not mention brokers at all." (*Id.* (quoting *Heliene, Inc. v. Total Quality Logistics, LLC*, No. 1:18-CV-799, 2019 WL 4737753, at *2 (S.D. Ohio Sept. 27, 2019)).) To this point, Plaintiff states that it pleads its state law claims in the alternative, should it later be determined that Defendants are brokers, not carriers. (*Id.* at Pg. ID 182-83.) Plaintiff cites numerous cases where Defendants have held themselves out as brokers and thus avoided Carmack Amendment claims. (*Id.* at Pg. ID 185 (collecting cases).) And, as Plaintiff points out, Defendants maintain that they "operated only as transportation brokers." (*Id.* (citing Motion, Doc. 20, n.1).) Thus, according to Plaintiff, it brings both a Carmack Amendment claim and the state law claims in the event that Defendants later attempt to escape liability by once again holding themselves out as brokers. (*Id.*)

Yet, at the same time, Plaintiff does not agree with Defendants' past characterization as brokers. (Response, Doc. 25, Pg. ID 186.) In fact, Plaintiff describes the "myriad representations that [Plaintiff] highlighted in the SAC," indicating that Defendants are carriers. (*Id.*) Most importantly, the Agreement between Defendants and Kelley "specifically provides for Defendants to assume common carrier liability of the Carmack Amendment." (*Id.; see also* Agreement, Doc. 20-2, ¶ 18.1.) Plaintiff ultimately believes, therefore, that "the Carmack Amendment applies and Defendants' liability is for the full actual value of the shipment they damaged." (*Id.*) Nevertheless, Plaintiff seeks

to keep open the possibility of prevailing on state law claims, if Defendants attempt to argue that they are brokers. (*Id.*)

Setting aside the broker-carrier debate, Plaintiff still argues that Counts 2 and 3 are not preempted by the Carmack Amendment because the claims are "unrelated to loss or damage to goods from interstate transport." (Response, Doc. 25, Pg. ID 187-88 (quoting *McCarthy v. Krupp Moving & Storage II, LLC*, No. 1:24-CV-79, 2024 WL 3413255, at *2-3, 5 (S.D. Ohio July 15, 2024)).) To that end, Plaintiff claims that its breach of bailment duty and breach of contract claims are independent from its claim for damage to the BEAMSCAN System. (*Id.* at Pg. ID 189.) Instead, the SAC alleges that Defendants' false representations and failure to perform damaged Plaintiff. (*Id.*) Specifically, Plaintiff states that it was damaged "by [Defendants'] duplicity when entering into the agreement governing the services it provided." (*Id.*) And, a carrier or broker's dishonesty "is a claim outside of any damages arising from the transport of property covered by the Carmack Amendment." (*Id.*) Thus, Plaintiff contends that its claims are properly pled.

Defendants raise several problems with Plaintiff's arguments. First, Defendants take issue with Plaintiff's attempt to alternatively plead Counts 2 and 3 as if Defendants were brokers, when the plain language of the SAC only refers to them as carriers. (Reply, Doc. 26, Pg. ID 195.) Indeed, the SAC states: "[Defendants were] not engaged to perform any freight broker services, did not perform any freight broker services on behalf of Kelley Logistics and/or [Plaintiff] and/or did not perform any freight broker services relevant to this litigation or pursuant to this Agreement." (*Id.* (citing Second Am. Compl.,

7

Doc. 20, ¶ 14).) Defendants highlight that Plaintiff "could have filed a SAC that attempts to set forth cognizable claims against Defendants as a broker," but did not do so. (*Id.*)

The Court finds Defendants' argument persuasive. To be sure, "alternative and even inconsistent" pleading is permitted under Rule 8. *See* Fed. R. Civ. P. 8(d); *Miranda v. Xavier Univ.*, 594 F. Supp. 3d 961, 969 (S.D. Ohio 2022). "A claim pleaded in the alternative, however, is just like any other claim challenged pursuant to Rule 12(b)(6) and must be dismissed if the operative complaint pleads no plausible version of the facts that would support that claim." *Busler v. Nissan N. Am., Inc.*, 688 F. Supp. 3d 668, 691 (M.D. Tenn. 2023). Here, Plaintiff pled explicitly that Defendants acted as motor carriers and were "not engaged to perform any freight broker services . . . [and] did not perform any freight broker services relevant to this litigation." (Second Am. Compl., Doc. 20, ¶¶ 13-14.) Nowhere in the Second Amended Complaint does Plaintiff attempt to allege (even in the alternative) that Defendants could have acted as brokers; indeed, Plaintiff goes out of its way to emphasize that Defendants were not brokers. (*Id.*) And, Plaintiff provides the contract between Kelley and Defendants, which clearly states that Defendants were motor carriers for purposes of Plaintiff's transportation services, while Kelley was the broker. (*See* Agreement, Doc. 20-2.)

Moreover, the case law Plaintiff points to is inapplicable. In *Schneider Elec., USA v. Landstar Inway, Inc.*, No. 1:11-CV-801, 2012 WL 3234244 (S.D. Ohio Aug. 7, 2012), for instance, the Court had previously dismissed the state common law claims against the defendant because they were preempted by the Carmack Amendment. 2012 WL 3234244, at *1. On a motion for reconsideration, however, the Court reinstated the common law

8

claims because the defendant raised, as an affirmative defense, that it was a broker, not a carrier. *Id.* Unlike here, though, the complaint in *Schneider* did not explicitly preclude the possibility that the defendant acted as a broker. *See* Am. Compl., *Schneider Elec.*, No. 1:11-CV-801 (S.D. Ohio), Doc. 7. Instead, the complaint described the defendants as "common carriers, bailees, and/or warehouseman," which left open the potential for the defendants to be subject to common law claims. Similarly, in *Universal Medical Systems, Inc. v. C.H. Robinson Worldwide, Inc.*, the court vacated its previous order dismissing common law claims due to preemption under the Carmack Amendment. No. 1:12-CV-126, 2013 WL 12138550, at *4 (N.D. Ohio Feb. 6, 2013). Once again, though, the complaint did not include specific language that precluded the defendant's characterization as a broker. *See* Compl., *Universal Medical Sys., Inc.*, No. 1:12-CV-126,(N.D. Ohio), Doc. 1-1.

Compare these pleadings to Plaintiff's, which explicitly asserts that Defendants are not brokers and never acted as brokers for the events related to this litigation. Plaintiff could have pled its state law claims in the alternative. But, to do so, Plaintiff should have put forth facts that support the common law claims. *See Dobronski v. Tobias & Assocs., Inc.*, 769 F. Supp. 3d 681, 705 (E.D. Mich. 2025) (explaining that a plaintiff may bring inconsistent claims, "even though both cannot be true, as long as the plaintiff pleads a plausible claim for relief"); *Busler*, 688 F. Supp. 3d at 691. Instead, Plaintiff left open no possibility that Defendants were brokers but alleged they were only motor carriers. Without facts supporting the plausibility that Defendants were brokers, not carriers, the SAC does not sufficiently plead the state law claims for breach of contract and bailment duty. Those claims fail as a matter of law.

As an alternative argument, Plaintiff contends that the common law claims should remain because Defendants caused Plaintiff harm with their duplicitous representations, but this argument is unpersuasive as well. Indeed, common law claims "unrelated to the loss or damage to goods from interstate transport" are not precluded by the Carmack Amendment. *McCarthy*, 2024 WL 3413255, at *2-3, 5. But, Plaintiff's claims do not fall into this category. First, as to the breach of contract claim, the SAC states that Plaintiff had a "valid and binding contractual agreement with the Defendants to provide Transportation Service and to ensure the transportation of its BEAMSCAN System," but "Defendants breached this agreement by failing to deliver the BEAMSCAN System in an undamaged condition." (Second Am. Compl., Doc. 20, ¶¶ 61-62.) This claim falls squarely under the umbrella of a Carmack Amendment claim.

But, Plaintiff then attempts to make the contract claim unrelated to the shipment by stating that "[b]ased on information and belief, Defendants may have also breached this agreement by making false representations and/or by failing to fulfill all agreed upon terms and conditions in the Agreement." (Second Am. Compl., Doc. 20, ¶ 64.) Yet, Plaintiff provides no allegations about what this misrepresentation or failure to fulfill could be. In fact, the claim states that Defendants "may" have done these things, a noncommittal and vague allegation. (*Id.*) Indeed, such a claim fails. The Sixth Circuit has clarified that a plaintiff "can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Northampton Restaurant Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012) (cleaned up). While Plaintiff attempts to argue that the contract claim alleges a

10

breach of the covenant of good faith and fair dealing inherent in every contract, Defendants are correct to point out that the pleading does not support this theory of contractual liability. (*See* Reply, Doc. 26, Pg. ID 199.) As explained above, the vague reference to a possible false representation does not satisfactorily form a claim upon which relief could be granted. Thus, Plaintiff has not sufficiently pled a breach of contract claim that falls outside the Carmack Amendment's preemption.

The same is true for Plaintiff's breach of bailment duty claim. To start, the claim simply states that "[i]n taking possession of and transporting the BEAMSCAN System, Defendants failed to exercise ordinary care to deliver the BEAMSCAN System in good and undamaged condition," and, as a result, Plaintiff has suffered damages. (Second Am. Compl., Doc. 20, ¶ 58.) This claim clearly relates to the transport and shipment of goods and, accordingly, is preempted by the Carmack Amendment. *See McCarthy*, 2024 WL 3413255, at *2-3, 5. And, as Defendants point out, Plaintiff does not provide any rationale in its Response to demonstrate that the claim is unrelated to the shipment of goods. (*See* Reply, Doc. 26, Pg. ID 201.) The claim for breach of bailment duty is therefore preempted and must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court orders the following:

1. Defendant's Motion to Dismiss (Doc. 10) and Motion to Dismiss Plaintiff's Amended Complaint (Doc. 13) are both **DENIED AS MOOT**;

2. Defendant's Motion to Dismiss Plaintiff's Second Amended Supplemental Complaint (Doc. 21) is **GRANTED**.

   a. Plaintiff's claim for violation of the Interstate Commerce Act **SHALL PROCEED**;

   b. Plaintiff's breach of bailment duty claim is **DISMISSED**; and

   c. Plaintiff's breach of contract claim is **DISMISSED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT<br>
SOUTHERN DISTRICT OF OHIO<br>
By: _/s/ Matthew W. McFarland_<br>
JUDGE MATTHEW W. McFARLAND